**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 22-7168**

# In the United States Court of Appeals
# for the District of Columbia Circuit

———————————

DISTRICT OF COLUMBIA;
THE STATE OF CALIFORNIA; AND
THE STATE OF ILLINOIS

*v.*

THE KROGER CO. AND
ALBERTSONS COMPANIES INC.

———————————

ON EMERGENCY APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(CIV. NO. 1:22-CV-03357, THE HONORABLE CARL J. NICHOLS)

———————————

**APPELLEE THE KROGER CO.'S REPLY IN SUPPORT OF ITS
RULE 8 CROSS-MOTION FOR SUMMARY AFFIRMANCE**

———————————

ROBERT REEVES ANDERSON
**ARNOLD & PORTER KAYE SCHOLER LLP**
*1144 15th Street Suite 3100*
*Denver, CO 80202*
*(303) 863-1000*

MATTHEW M. WOLF
MICHAEL B. BERNSTEIN
SONIA K. PFAFFENROTH
KOLYA D. GLICK
**ARNOLD & PORTER KAYE SCHOLER LLP**
*601 Massachusetts Avenue, N.W.*
*Washington, DC 20001*
*(202) 942-5000*

MARK A. PERRY
DREW TULUMELLO
JEFFREY PERRY
**WEIL, GOTSHAL & MANGES LLP**
*2001 M Street NW, Suite 600*
*Washington, DC 20036*
*(202) 682-7511*

ADAM BANKS
**WEIL, GOTSHAL & MANGES LLP**
*767 Fifth Avenue*
*New York, NY 10153*
*(212) 310-8000*

## **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................1

I.    Summary Affirmance Is Warranted .........................................3

II.   The District Court Correctly Held that Plaintiffs Cannot
      Establish a Likelihood of Success on the Merits.....................4

      A.    The District Court Did Not Clearly Err in Finding No
            Agreement Between Defendants to Pay the Dividend........4

      B.    Plaintiffs Cannot Establish an Antitrust Agreement .........6

      C.    Plaintiffs Cannot Establish a Restraint of Trade...............11

III.  There Is No Irreparable Harm ...............................................12

IV.   The Equities and Public Interest Do Not Support an Injunction.........13

CONCLUSION.................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Bose Corp. v. Consumers Union*,
    466 U.S. 485 (1984) ............................................................................................5

*Catalano, Inc. v. Target Sales, Inc.*,
    446 U.S. 643 (1980) ............................................................................................7

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................................7

*Fulweiler v. Spruance*,
    222 A.2d 555 (Del. 1966) ..................................................................................12

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017) .........................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................9

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) ........................................................................................7, 9

*Neal v. District of Columbia*,
    No. 92-7130, 1993 WL 32337 (D.C. Cir. 1993) .................................................3

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018) ......................................................................................12

*Poller v. CBS, Inc.*,
    368 U.S. 464 (1962) ........................................................................................8, 9

*Taxpayers Watchdog, Inc. v. Stanley*,
    819 F.2d 294 (D.C. Cir. 1987) ........................................................................3, 4

*United States v. Masonite Corp.*,
    316 U.S. 265 (1942) ........................................................................................7, 8

ii

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001)...................................................................4, 5

*Winter v. Nat. Res. Def Council*,
   555 U.S. 7 (2008)........................................................................................1

**Rules**

D.C. Cir. R. 8(a)(1) ...................................................................................13

## INTRODUCTION

The attenuated antitrust theory that the District of Columbia, California, and Illinois ("Plaintiffs") propose in this case has been rebuffed by every court to confront it. Indeed, in the short period since Kroger filed its combined Opposition to Plaintiffs' Motion for Emergency Injunctive Relief and Rule 8 Cross Motion for Summary Affirmance ("Mot."), two additional courts have expressed skepticism regarding Plaintiffs' novel effort to use the antitrust laws to enjoin the payment of a Pre-Closing Dividend unilaterally issued by Albertsons.

First, applying the same four-factor test that continues to govern Plaintiffs' preliminary injunction appeal, this Court denied Plaintiffs' motion for emergency injunctive relief. *See* Dec. 20, 2022 Order (applying *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)). Second, in the parallel Washington litigation, the Supreme Court of Washington temporarily enjoined the Pre-Closing Dividend under a permissive state-law standard but nonetheless noted: "The State does not make a compelling case at this juncture that it will prevail in the end." *Washington v. Albertsons Co., Inc.*, No. 101530-5 (Wash. Dec. 16, 2022). No court to consider Plaintiffs' novel antitrust theory has given it credence. This Court should not be the first.

Instead, this Court should summarily affirm the district court's order denying Plaintiffs' motion for a preliminary injunction. Plaintiffs fail to acknowledge—much less attempt to satisfy—the demanding "clear error" standard of review that applies to the district court's factfinding. Mot. 20-23. Plaintiffs also fail to contest that the district court's determination that there was no agreement to issue the Pre-Closing Dividend is an adverse *factual* finding. Together, these failures amount to a waiver of any challenge to the district court's finding that there was no such agreement.

Indeed, Plaintiffs' Opposition to Kroger's Motion for Summary Affirmance ("Opp.") illustrates rather than refutes why summary affirmance is appropriate here. Plaintiffs do not dispute that Albertsons unilaterally declared the Pre-Closing Dividend, or that Kroger can neither issue the Dividend nor prevent it from being issued. Plaintiffs' effort (at 10-11) to show concerted action by citing irrelevant provisions of the Merger Agreement only highlights their inability to show an agreement between Defendants to pay the Pre-Closing Dividend.

Plaintiffs' remaining arguments simply attempt to re-litigate factual disputes that they already lost and legal theories that this Court already rejected. This Court should summarily affirm.

2

## I.    Summary Affirmance Is Warranted

Summary affirmance is appropriate where, as here, there is no substantial question regarding the district court's disposition. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam). Plaintiffs barely respond to the arguments in Kroger's Motion for Summary Affirmance, and their appeal so clearly lacks merit as to warrant summary affirmance. *See id.*

There is no substantial question about the correctness of the district court's opinion.  Over the past three months, two courts (the District Court and the King County Superior Court) have considered and rejected Plaintiffs' theory of "agreement."  And two other courts (this Court and the Washington Supreme Court) have expressed serious doubt about the merits of Plaintiffs' claims.  None of these four courts has endorsed Plaintiffs' novel antitrust theory.

Here, Plaintiffs repeat the same rejected allegations about a $4 billion "dividend scheme." *See, e.g.*, Opp. 15, 18, 21.  They identify no outstanding issues of fact that would require remand.  Nor do they show that the district court's order was an abuse of discretion. *See, e.g.*, *Neal v. District of Columbia*, No. 92-7130, 1993 WL 32337, at *1 (D.C. Cir. 1993) (per curiam)

3

(granting summary affirmance on appeal from the denial of a preliminary injunction).  If anything, Plaintiffs' opposition brief makes it abundantly clear that "no benefit will be gained from further briefing and argument of the issues presented."  *Stanley*, 819 F.2d at 298.

## II. The District Court Correctly Held that Plaintiffs Cannot Establish a Likelihood of Success on the Merits

### A. The District Court Did Not Clearly Err in Finding No Agreement Between Defendants to Pay the Dividend

Plaintiffs ignore the import of the district court's factual finding that there was no agreement to issue the Pre-Closing Dividend.  *See* Mot. 20-23.

Plaintiffs do not contest that "the existence *vel non* of concerted action in a case brought in district court under Section 1 of the Sherman Act is a question of fact."  Mot. 21; *compare id.* (citing cases), *with* Opp. 10-14.  Nor do they challenge the "clearly erroneous" standard of review that this Court applies to the district court's factfinding.  *Compare* Mot. 21-22, *with* Opp. 10; *see also United States v. Microsoft Corp.*, 253 F.3d 34, 117 (D.C. Cir. 2001) ("[D]istrict court factfindings receive either full deference under the clearly erroneous standard or they must be vacated.").  And they admit that the district "court found no likelihood of concerted action" between Kroger and Albertsons.  Opp. 10; *see also* Mot. 22-23.

4

Plaintiffs thus seek to re-litigate factual questions *de novo*. For example, while the district court found the declarations of Defendants' executives to be "essentially unrebutted," Tr. 68:6-21, Plaintiffs attack the *credibility* of those declarations, asserting (at 13) that they were "self-serving" and arguing (at 12) in cursory fashion that the district court's decision to credit the executives' testimony was "erroneous." But credibility is a quintessential factual determination that cannot be disturbed except on clear-error review, a standard that Plaintiffs do not attempt to meet. *See Bose Corp. v. Consumers Union*, 466 U.S. 485, 500 (1984) (explaining that credibility determinations are factual findings owed "special deference"). Thus, while Plaintiffs continue to nit-pick the district court's factual findings, they do not even mention—much less attempt to satisfy—this Court's "clear error" standard. *See* Opp. 11-12.

Plaintiffs' failure to respond to Kroger's clear-error argument is dispositive. *See Microsoft*, 253 F.3d at 51-52 (affirming district court's conclusions where appellant "fail[ed] to challenge the District Court's factual findings, or to argue that these findings do not support the court's conclusions"). The district court, after a lengthy hearing and three rounds of briefing, held that Plaintiffs had not established an agreement to pay the Pre-Closing Dividend. Mot. 23. A trial court in Washington reached the same

conclusion after hearing live testimony from Defendants' executives.  *See*

Order, *Washington v. Albertsons Companies, Inc.*, No. 22-2-18046-3 SEA, at

4 (Wash. Super. Ct. Dec. 9, 2022) ("Wash. Order") ("The parties did not agree

that Albertsons would issue that special dividend nor did Kroger require

Albertsons to do so.").  Plaintiffs offer no basis for disturbing those well-

founded factual findings, and this Court should affirm for that reason alone.

### B.    Plaintiffs Cannot Establish an Antitrust Agreement

Plaintiffs do not point to evidence of an agreement actionable under

Section 1 of the Sherman Act because there is none.  As the evidence clearly

shows, the issuance of a Pre-Closing Dividend was and is Albertsons'

*unilateral* decision and its *unilateral* responsibility.  Indeed, Plaintiffs moved

for a preliminary injunction "to prevent *Albertsons* from issuing a 'special cash

dividend,'" not Kroger.  *See* Pls.' Mem. in Supp. Prelim. Inj. at 1 (emphasis

added); *see id.* at 28.

***First***, the Merger Agreement confirms that there was no agreement to

pay the Pre-Closing Dividend.  Plaintiffs do not dispute:  that the Agreement

does not require Albertsons to issue the Pre-Closing Dividend; that Kroger

has no authority to issue the Dividend; that Kroger cannot demand that

Albertsons issue the Dividend or prevent Albertsons from issuing the

Dividend; or that Kroger has no claim of breach regardless of whether Albertsons issues or does not issue the Dividend. *See* Mot. 4, 7. In fact, Plaintiffs acknowledge that Albertsons independently decided to declare the Dividend *before* signing the Merger Agreement by admitting (at 12) that the Agreement merely "memorializes Albertsons' declaration of the dividend." Plaintiffs also appear to acknowledge (at 13-14) that the Pre-Closing Dividend "can be viewed in isolation as unilateral."

Contrary to Plaintiffs' protests (at 13), these concessions are neither "irrelevant" nor "immaterial"; they are dispositive. Unilateral action cannot establish a Section 1 violation. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Inherent in "concerted" action under Section 1 is a requirement for action by *both* parties. *See, e.g.*, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 644 (1980) (price-fixing scheme among competitors); *United States v. Masonite Corp.*, 316 U.S. 265, 275-76 (1942) (finding price-fixing scheme when parties *agreed* to enter a contract to fix prices and then *agreed* to sell products at prices fixed by another party).[1] The declaration of the Pre-Closing

---

[1] While the Supreme Court used the word "acquiescence" in *Masonite*, the facts of that case reveal that the conspirators actively entered into an express price-fixing agreement. *See Masonite*, 316 U.S. at 270-76 (finding

Dividend was unilateral conduct by Albertsons; that fact dictates the outcome here.

**Second**, given Plaintiffs' inability to identify an agreement to pay the Pre-Closing Dividend in the Merger Agreement, Plaintiffs attempt to cobble together an antitrust "agreement" from the Merger Agreement's routine ordinary-course-of-business provisions (*e.g.*, restrictions on debt and financing). *See* Opp. 2, 7. But Plaintiffs offer no explanation for how this Court should divine an agreement *to pay a Pre-Closing Dividend* from these standard contractual provisions that Plaintiffs do not even seek to enjoin. *See* Opp. 11.

Plaintiffs accordingly miss the mark by relying on *Poller* for the proposition that the Court may find a horizontal agreement "even if aspects of the arrangement, viewed in isolation, appear unilateral." Opp. 2 (citing *Poller v. CBS, Inc.*, 368 U.S. 464, 468-69 (1962)). The Pre-Closing Dividend is not an "aspect" of the alleged anticompetitive agreement; it is the *entire* alleged agreement and the *only* "arrangement" that Plaintiffs seek to enjoin here. This case is thus a far cry from *Poller*, where the alleged "unilateral" action (a

---

agreement where manufacturer entered into express contracts with dealers that allowed Masonite to fix the prices at which they sold their products).

broadcasting network's termination of an affiliation agreement) formed just one part of a broader conspiracy to force a local network out of business through concerted action by multiple actors. *See Poller*, 368 U.S. at 465-67.

***Third***, and relatedly, Plaintiffs fail to present "evidence that tends to exclude the possibility of independent action." *Monsanto*, 465 U.S. at 768. Contrary to Plaintiffs' arguments (at 13), evidence excluding the possibility of independent action not only "matter[s]," Plaintiffs *must* offer it to establish their claims. Absent evidence to exclude the district court's commonsense conclusion that Albertsons unilaterally declared the dividend, Tr. 67:4-17, Plaintiffs cannot establish an anticompetitive agreement, *contra* Opp. 13. "[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986). Plaintiffs have not excluded unilateral action here; they have confirmed it.

***Fourth***, even assuming this Court were to review the evidence of agreement *de novo* (as explained *supra* at 4-6, it should not), Plaintiffs continue to ignore the persuasive evidence upon which the district court based its findings. For example, Plaintiffs fail to respond to the unambiguous

9

evidence that Albertsons declared its intent to pay the Dividend *before* merger negotiations began, which includes an internal slide presentation to Kroger's board stating that the Dividend will be paid "regardless of closing." *See* Mot. 26-27. Particularly when combined with the corroborating declarations from Defendants' executives, this evidence is fatal to Plaintiffs' claims. *See id.* at 27-30.

*Fifth*, the additional evidence that Plaintiffs cite does not support the existence of any agreement regarding the Pre-Closing Dividend. The joint press statement summarizes the Merger Agreement, which Plaintiffs acknowledge (at 13) does not require the payment of the Dividend. And contrary to Plaintiffs' claims, neither the Investor Presentation nor the merger website describe the Dividend as "part of the merger's '[c]onsideration.'" Opp. 12 (quoting Investor Presentation). Both the Presentation and the website reference the Dividend only to explain potential adjustments to the consideration to be paid by Kroger. *See* Krogeralbertsons.com, *Investor Information* ("Albertsons Cos. intends to declare and pay special cash dividend of up to $4B before close, which will reduce purchase price commensurately[.]"); Investor Presentation at 6

(similar). The Dividend is not consideration for the *merger*; the Dividend *reduces* the consideration paid to effectuate the merger.

### C.    Plaintiffs Cannot Establish a Restraint of Trade

Even if Plaintiffs could establish an agreement to pay the Pre-Closing Dividend, they have not articulated a coherent theory of anticompetitive harm, much less proven they are likely to succeed on it.

***First***, Plaintiffs fail to mention—much less defend—their initial "failing firm" theory of harm: that "the purpose of the dividend was to self-sabotage Albertsons' business . . . which would then facilitate approval of the merger." Mot. 32. Plaintiffs have abandoned this theory, and with it, the only plausible motivation to explain a purported agreement in restraint of trade.

***Second***, Plaintiffs' fallback theory of harm—that the Pre-Closing Dividend will deplete Albertsons' cash reserves, which in turn, will irreversibly harm competition—lacks any legal support. Plaintiffs concede (at 1) that their claim is "novel," and appear to acknowledge (at 2) that "blackletter law d[oes] not straightforwardly condemn" the alleged agreement. Plaintiffs have not identified any case in history challenging a company's dividend under antitrust law. *See* Mot. 33.

11

***Third***, notwithstanding Kroger's arguments, *see* Mot. 33-34, Plaintiffs do not attempt to identify—much less properly define—any antitrust market that could be affected by the payment of the Dividend.  Under the rule-of-reason analysis, this failure is dispositive.  *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018).  Plaintiffs' emphasis (at 18-19) on identifying a "pro-competitive" justification for the Dividend only underscores the illogical nature of their theory because, under Plaintiffs' logic, *every* dividend would be subject to "quick look" review, even though dividends are a lawful, commonplace way to return value to shareholders.  *See, e.g.*, *Fulweiler v. Spruance*, 222 A.2d 555, 558 (Del. 1966).

## III.   There Is No Irreparable Harm

Plaintiffs' irreparable harm arguments seek to re-litigate their request for an injunction pending appeal, which this Court already denied.  *See* Dec. 20, 2022 Order.  With no record citation, Plaintiffs assert that "[t]he record shows that[] without a preliminary injunction, competition in the supermarket industry will be irreparably harmed by higher prices that can never be recouped."  Opp. 21.  Plaintiffs could not show irreparable harm in their emergency motion when they *did* cite evidence.  Applying the same ultimate

standard, *see* Mot. 17 (citing, *inter alia*, *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017), and D.C. Cir. R. 8(a)(1)), they have not shown it here.

## IV.    The Equities and Public Interest Do Not Support an Injunction

Finally, Plaintiffs' appeal (at 22) to the "public interest in effective antitrust enforcement and consumer welfare" favors summary affirmance, not further extending Plaintiffs' meritless "emergency" litigation.   Antitrust enforcement should address the heart of anticompetitive agreements; it should not be weaponized to interfere with legitimate business activity.

## CONCLUSION

This Court should grant Kroger's motion for summary affirmance.

Dated: January 10, 2023

Respectfully submitted,

*/s/ Robert Reeves Anderson*
Robert Reeves Anderson
ARNOLD & PORTER KAYE
SCHOLER LLP
1144 15th Street Suite 3100
Denver, CO 80202
Phone: (303) 863-1000
Fax: (303) 863-2301
Reeves.Anderson@arnoldporter.com

Matthew M. Wolf
Michael B. Bernstein
Sonia K. Pfaffenroth
Kolya D. Glick
ARNOLD & PORTER KAYE
SCHOLER LLP

13

601 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
Matthew.Wolf@arnoldporter.com

/s/   *Mark Perry*
Mark A. Perry
Drew Tulumello
Jeffrey Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
Phone: (202) 682-7511
Fax: (202) 857-0940
E-mail: mark.perry@weil.com

Adam B. Banks
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Fax: (212) 310-8007
Email: adam.banks@weil.com

*Attorneys for Defendant The Kroger Co.*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limit of Circuit Rule 8(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 2,480 words.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word and Century 14-point font.

Dated:  January 10, 2023          */s/ Robert Reeves Anderson*
                                  Robert Reeves Anderson

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system. True and correct copies were also served via e-mail to:

Brian J. Leitch
bryan.leitch@dc.gov

Caroline S. Van Zile
caroline.vanzile@dc.gov

Ashwin P. Phatak
ashwin.phatak@dc.gov

Adam Gitlin
adam.gitlin@dc.gov

Alex Hemmer
alex.hemmer@ilag.gov

Paula Lauren Gibson
paula.gibson@doj.ca.gov

Edward D. Hassi
thassi@debevoise.com

J. Robert Abraham
jrabraham@debevoise.com

Leah S. Martin
lmartin@debevoise.com

Shannon Rose Selden
srselden@debevoise.com

Stephen L. Ascher
sascher@jenner.com

William S.C. Goldstein
wgoldstein@jenner.com

Adrianna D. Kastanek
akastanek@jenner.com

Gabriel K. Gillett
ggillett@jenner.com

Miriam J. Wayne
mwayne@jenner.com

Dated:  January 10, 2023          */s/ Robert Reeves Anderson*
                                  Robert Reeves Anderson

17